El Pueblo de Puerto Rico, demandante y apelado, *v.* Rosendo Torres Pabón, acusado y apelante.

Núm. 6538.—*Sometido:* Junio 2, 1937. *Resuelto:* Julio 16, 1937.

*Luis Tirado Géigel,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Rosendo Torres Pabón fué denunciado por el policía insular Jorge Luis Maldonado como autor de una infracción al artículo 95 de la Ley de Servicio Público (Ley núm. 70 de 1917 (2) pág. 433) y de la Orden final de la Comisión de Servicio Público de octubre 15, 1932, consistente en haber transportado el 21 de marzo de 1936 en el automóvil que manejaba, sin estar autorizado para ello, pasajeros mediante paga dentro de la ruta de San Juan a Río Piedras servida por la White Star Line, Inc.

Declarado culpable por la corte del distrito y condenado a pagar cincuenta dólares de multa y en defecto de pago a sufrir un día de cárcel por cada dólar que dejare de satis-

facer, apeló para ante esta Corte Suprema. Pide la revocación de la sentencia por ser contraria a la prueba y a la ley.

■■ Toda la evidencia que tuvo ante sí la corte sentenciadora fué elevada a esta Corte Suprema. La de cargo consistió en la copia certificada de la Orden de la Comisión de Servicio Público cuya infracción se imputa al acusado y en las declaraciones del denunciante y de Luciano Rodríguez. La de descargo en el testimonio del propio acusado.

A preguntas del fiscal declaró el denunciante que:

"En la Avenida Ponce de León, Parada 20, el acusado guiaba con dirección a Río Piedras, como a las 7:20 de la mañana, el carro público 934. Allí, en la Parada 20, estaba el señor Luciano Rodríguez y paró el carro frente a una guagua y tomó el pasajero, lo invitó para Río Piedras. . . El chófer, cogió el pasajero y entonces yo lo arresté en la Parada 21."

Repreguntado por el abogado defensor del acusado, contestó:

"P.—¿Usted dice que iba con dirección a Río Piedras?—R.—Sí señor.—P.—¿Usted lo sabe porque lo oyó decir a él?—R.—Porque lo invitó para Río Piedras.—P.—¿Para que punto exacto en Río Piedras?—R.—Para Río Piedras, el punto exacto no sé.—P.—¿Usted se dedica, Maldonado, al servicio de motocicletas?—R.—Servicio del tráfico desde San Juan a Río Piedras.—P.—¿Podría decirnos hasta qué punto en Río Piedras está cubierto por la ruta de la White Star Line?—R.—Está cubierto hasta frente de la Plaza del Mercado, que cruza una calle hacia arriba a salir a la Plaza de Río Piedras. . . . P.—¿Pero más allá de la Plaza de Recreo no llega?—R.—No señor.— P.—¿Usted no sabe si el acusado se dirigía a un punto más allá?— R.—No señor."

Llamó entonces el fiscal a Rodríguez, y a sus preguntas contestó:

"R.—Mandé a parar un carro público para que me llavara hasta la carretera, hasta el kilómetro 5 de la carretera de Caguas.—P.— ¿Y pagaba por eso diez centavos?—R.—No señor, no.—P.—¿Cuándo fué?—R.—Lo que me pidiera el carro.—P.—¿No convino con él nada? —R.—No señor. . . . R.—El asunto es que yo paré el carro en la

Parada 20 para que me llevara hasta el kilómetro 5 de la carretera de Caguas, porque trabajo con el Gobierno Federal. En ese tiempo era inspector de la construcción de carreteras federales en ese sitio.''

Y a las repreguntas de la defensa, como sigue:

''R.—También trabajaba en la PRRA.—P.—¿En qué sitio? . . R.—En el kilómetro 5 de la carretera de Caguas, o sea en la carretera para Cupey Alto, que era la que construía la PRRA.—P.—¿Eso es más allá del puente, a la salida para la carretera de Caguas?— R.—Sí señor.—P.—¿Y a ese sitio era que usted se dirigía esa mañana?—R.—Sí señor. . . P.—¿Cuando usted tomó el carro que conducía el acusado en la Parada 20, qué pasó allí?—R.—Que como a los 20 metros del sitio donde cogí el carro estaba el policía y nos mandó a parar.—P.—¿Y qué hizo?—R.—Nos condujo al cuartel de la Parada 21.—P.—¿Le dijo algo a ustedes?—R.—Le dije que iba para el kilómetro 5 de la carretera de Caguas.—P.—¿Usted se lo manifestó a él; pero él le hizo preguntas, interrogatorio, investigó algo? —R.—Investigación no hizo ninguna. Yo le dije que iba para el kilómetro 5 de la carretera de Caguas.—P.—¿El policía le vió a usted pagando importe de pasaje alguno?—R.—No señor.''

Pidió el acusado que se le absolviera perentoriamente y la corte declaró sin lugar su moción. Declaró entonces, contestando a preguntas de su abogado, como sigue:

''P.—¿Usted se dedicó algún tiempo a manejar vehículos públicos?—R.—Sí, señor.—P.—¿Se dedicó usted en alguna ocasión a lo que comúnmente se llama belloneo?—R.—Me dediqué pero el día a que se refiere la denuncia no estaba belloneando.—P.—¿En la mañana a que se refiere la denuncia, eso fué en el mes de marzo de este año, 1936, no es así?—R.—Sí señor.—P.—¿Qué estaba usted haciendo?—R.—Pues yo iba en un carro público que yo estaba trabajando de aquí de San Juan en dirección a la carretera de Caguas, y cuando iba por la 20, de venir a buscar unos amigos míos que iban para Caguas. . . . P.—¿Al meterse en el carro le dijo el pasajero para dónde se dirigía?—R.—Dijo, 'Voy para Caguas, en dirección para Caguas.' Él me dijo, '¿Para dónde usted va?' y yo le dije, 'Para Caguas,' y él me dijo, 'Yo voy para el kilómetro 5.' . . . P.— ¿Y qué pasó?—R.—A veinte metros así detrás de la White Star Line, detrás de una guagua, al lado izquierdo, estaba el policía. Entonces mandó a parar y paré y dice, 'sigue para alante y párate en

el Cuartel' y yo seguí. . . . P.—¿Y el pasajero, qué se hizo?—R.—Cogió otro vehículo.—P.—¿Recibió usted paga alguna?—R.—No señor.''

El fiscal no le hizo repregunta alguna.

Ésa fué la prueba que sirvió de base a la sentencia condenatoria. A nuestro juicio es de tal manera insuficiente que no puede llegarse a otra solución que no sea a la revocación de la sentencia recurrida. Quizá fuera verdad que en el día de la denuncia estuviera el acusado violando la ley como confesó que lo había hecho anteriormente, pero la violación específica que se le imputó y por la que fué perseguido, no quedó demostrada.

El acusado tenía derecho a manejar el automóvil y a conducir pasajeros en él mediante paga hasta el kilómetro 5 de la carretera de Río Piedras a Caguas. Y eso fué lo único que demostró la prueba de cargo. El testigo Rodríguez que fué el pasajero que vió conducir el policía denunciante, se llamó a declarar por el Pueblo.

Sólo se encuentra en la declaración del policía algo en contra del acusado, a saber, su aseveración de que el acusado invitó al pasajero a ir a Río Piedras. Perdió sin embargo su fuerza la aseveración al explicar el propio denunciante que la ruta prohibida para el acusado sólo llegaba hasta la plaza de Río Piedras y al declarar el otro testigo de cargo que él iba para más allá de la Plaza, esto es, para el kilómetro cinco de la carretera de Río Piedras hacia Caguas.

Lo que sin duda ha sucedido en este caso es que convencido el policía de la culpabilidad del acusado por su conducta anterior, se precipitó en su arresto y la evidencia que creyó completa resultó luego insuficiente. Quizá la corte actuó bajo la idea de que dictaba una sentencia justa y quizá así fuera en efecto. Pero sometida la evidencia al debido examen, no es posible sostener su actuación. Es a base de lo alegado y probado en cada caso concreto que se dicta la sentencia. La circunstancia de que el acusado confesara que había cometido otras violaciones, no puede considerarse como

que suple la deficiencia de la prueba de la violación específica perseguida cuya comisión negó.

*Por virtud de todo lo expuesto debe declararse con lugar el recurso, revocarse la sentencia apelada y absolverse al acusado.*

El Juez Asociado Señor Córdova Dávila no intervino.